

DAVID E. RICE
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| AMIN FAYAZI, | ) | Case No. 18-21642-DER |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| TIMOTHY JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Pro. No. 18-00387 |
| | ) | |
| AMIN FAYAZI, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OF DECISION**

Now before the Court is the matter of entry of judgment in this adversary proceeding. Prior to the reassignment of this case, Judge Robert A. Gordon conducted a trial on the merits, heard closing argument, and issued oral findings of fact and conclusions of law. At the hearing held on January 27, 2020, Judge Gordon determined that the debt owed by the defendant, Amin Fayazi ("Fayazi"), to the plaintiff, Timothy Johnson ("Johnson"), is not dischargeable under 11 U.S.C. § 523(a)(2)(A) and directed the parties to submit supplemental memoranda on the issue of the amount of damages to be awarded in this Court's judgment. The parties did so [Docket Nos. 42 and 43]. Thereafter, the COVID-19 pandemic intervened.

After the case was reassigned, I reviewed the supplemental memoranda and listened to the Court's recording of Judge Gordon's ruling on January 27, 2020. The Court then entered an order on April 28, 2020, directing Johnson and Fayazi to submit affidavits regarding damages by May 29 and June 26, 2020, respectively. The Declaration of Timothy Johnson was filed on June 1, 2020 [Docket No. 46] (the "Johnson Declaration"). Fayazi filed a response on July 1, 2020 [Docket No. 50] (the "Fayazi Response").[1] I have now had the opportunity to listen to the recording of the trial conducted by Judge Gordon on December 3, 2019. After review and consideration of the Johnson Declaration and the Fayazi Response, the Court concludes that no further hearing or briefing is necessary or required to enter judgment in this matter.[2] For the reasons explained below, a judgment will be entered in the amount of $15,020.00 against Fayazi, which judgment shall be excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

The Court turns first to the questions that Judge Gordon raised when he deferred entry of judgment at the conclusion of closing argument—namely, the legal basis for (i) recovery by Johnson of the contract price rather than the amount actually paid by him, and (ii) Johnson's claim for recovery of his attorney's fees. Finally, the Court considers the last-minute claim made by Johnson for an award of $30,000.00 in punitive damages against Fayazi.

<u>Actual Contract Damages</u>

After reviewing the evidence, the Court concludes that Judge Gordon was simply under the misimpression that the only payments made by Johnson were the three initial checks dated May 8, 2018, Check Nos. 3558, 3559, and 3560 in the amounts of $2,500.00, $2,500.00, and

---

[1] An unsigned version of what appears to be the same document as the Fayazi Response was filed on June 25, 2020 [Docket No. 47]. Although the Fayazi Response is neither an affidavit nor an unsworn declaration under 28 U.S.C. § 1746, the Court accepts for purposes of this ruling that the statements made in the Fayazi Response about Fayazi's current health, employment, and financial circumstances are true.

[2] As Judge Gordon stated in his oral findings of fact and conclusions of law, (i) this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and Local Rule 402 of the United States District Court for the District of Maryland, and (ii) this is a statutory and constitutional core proceeding under 28 U.S.C. § 157(b)(2)(I) in which this Court may enter final judgment.

$4,700.00, respectively [Plaintiff's Exhibit 2, Pages 1 to 3]. These checks total $9,700.00, an amount that was stated as the "deposit" in the contract dated May 8, 2018 signed by the parties [Plaintiff's Exhibit 1] (the "Contract"). The evidence demonstrates, however, that Johnson gave Fayazi three additional checks dated May 25, 2018, Check Nos. 3563, 3564, and 3565 in the amounts of $3,066.66, $3,066.66, and $3,066.68, respectively [Plaintiff's Exhibit 2, Pages 4 to 6]. This second group of checks totals only $9,200.00—that is, $500.00 less than the amount the Contract reflects as the remaining "balance" due. Although he repeatedly indicated that the entire contract price of $19,400.00 was paid to Fayazi, no evidence was introduced of any other payment by Johnson. It appears that Johnson and his counsel simply mistakenly believed that the six checks totaled $19,400.00 when in fact they totaled $18,900.00. The Court thus finds that the total amount paid by Johnson to Fayazi was only $18,900.00.

In his oral ruling on January 27, 2020, Judge Gordon found that Fayazi partially completed performance of the Contract and that as a result he was entitled to a credit of 20% of the contract price against his liability for repayment of amounts received from Johnson. Twenty percent of $19,400.00 equals $3,880.00. Accordingly, Fayazi's breach of contract liability to Johnson is $15,020.00 ($18,900.00 minus $3,880.00).[3]

### Attorney's Fees

Johnson's Complaint asserts in the wherefore clause that he is entitled to recover a judgment against Fayazi for "attorney's fees as allowable by law in an amount the Court determines to be reasonable" [Docket No. 1 (the "Complaint"), Page 3 of 4]. Johnson's pre-trial memorandum makes no mention of a claim for attorney's fees [Docket No. 23], nor does his

---

[3] In his supplemental memorandum, Johnson calculates Fayazi's liability to be $15,520.00. As explained above, this $500.00 difference results from Johnson's mistaken belief that the total amount paid was $19,400.00 when the evidence before the Court demonstrates that the total was in fact only $18,900.00. It makes clear, however, that Johnson and the Court have the same understanding of Judge Gordon's oral ruling on this issue.

post-trial memorandum [Docket No. 40]. At the conclusion of his oral ruling on January 27, 2020, Judge Gordon indicated that he doubted that Johnson was entitled to an award of attorney's fees under the American Rule and directed his counsel to file a memorandum providing the legal basis for such a claim. The supplemental memorandum filed by Johnson after Judge Gordon's ruling also offers no legal authority for a claim for attorney's fees and indeed makes no mention of such a claim [Docket No. 43].

The Court agrees that the default of the American Rule on attorney's fees applies in this instance. The granting of an exception from the Rule is generally permitted only when expressly provided for by contract or statute. The Contract provides for attorney's fees, but only in event of a default by Johnson. The Court has not been directed by Johnson to any statute that permits recovery of attorney's fees in connection with a claim of this type and thus concludes that Johnson is not entitled to such an award. In any event, he appears to have abandoned such a claim. Thus, no judgment will be entered against Fayazi for attorney's fees.

Punitive Damages

In his supplemental memorandum, Johnson raises for the first time in this Court a claim for an award of $30,000.00 in punitive damages against Fayazi. The only mention of punitive damages in the Complaint is reference to the fact that Johnson filed a complaint in state court against Fayazi "seeking an award of compensatory and punitive damages in excess of $20,000.00" [Docket No. 1, Page 2 of 4].[4] Unlike the state court complaint, however, the Complaint filed here makes no such request. Johnson filed a proof of claim in Fayazi's main

---

[4] Johnson filed a four-count complaint in the District Court of Maryland for Howard County against Fayazi and others for breach of contract, breach of implied covenant of good faith and fair dealing, unjust enrichment, and fraudulent misrepresentation [Plaintiff's Exhibit 3]. The wherefore clause of that complaint prays for an award of "punitive damages for Defendants' willful and wanton conduct." The state court complaint is dated August 24, 2018. No evidence of the record in the Howard County case was introduced into evidence. In any event, it was automatically stayed under 11 U.S.C. § 362(a) when Fayazi filed a petition in this Court later that same month.

bankruptcy case, but it does not explain the basis for or identify in any way the components of that claim; nor does it explain how the amount of the claim was calculated.[5]  As far as this Court can determine, nothing filed by Johnson—or argued on his behalf in open court—asserted a right to punitive damages until his supplemental memorandum was filed after Judge Gordon made his oral ruling.  In short, it is a claim sprung on the Court and Fayazi by surprise only after trial was concluded and the Court had ruled on the merits.

Nothing in Judge Gordon's discussion with Johnson's counsel suggests that he was entertaining any additional issues other than determination of the amount the evidence showed was actually paid to Fayazi and the question of attorney's fees.  For that reason alone, the claim for punitive damages should be denied as barred by due process considerations.  Considered separately on its merits, however, the Court finds that an award of punitive damages is not appropriate in this instance.

In support of his claim for an award of punitive damages, Johnson directs this Court to the decisions of the Court of Appeals of Maryland in *Ellerin v. Fairfax Savings, F.S.B.*, 337 Md. 216 (1995), and *Darcars Motors of Silver Spring, Inc. v. Borzym*, 379 Md. 249 (2004), and this court's decision in *Phillip v. Reecher (In re Reecher)*, 514 B.R. 136 (Bankr. Md. 2014).  These decisions indeed set forth the applicable law this Court should consider when determining punitive damages and also make clear that such award is generally appropriate if a plaintiff has established the liability of a defendant for fraud or misrepresentation.  It is also the case as Johnson asserts that if a debt is determined to be nondischargeable under 11 U.S.C. § 523(a)(2)(A), punitive damages awarded in connection with such a claim are

---

[5] Claim No. 1 [Plaintiff's Exhibit 4].  The proof of claim was filed by Johnson's attorney and merely states that the amount of the claim is $30,000.00 and that the basis for the claim is "fraudulent misrepresentation."  The state court complaint was not attached to the proof of claim.  Thus, it provided no notice that Johnson intended to assert a claim for punitive damages against Fayazi.

~ 5 ~

themselves nondischargeable. *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998); *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 220 (4th Cir. 2007) ("[The Supreme Court] has determined that subsection (a)(2)(A) provides an exception to the discharge of punitive damages when those punitive damages arise from a debt obtained through fraud.").

The question for this Court is whether an award of punitive damages is appropriate in this case after considering the applicable factors. I conclude that it is not. In *Darcars*, the Court of Appeals of Maryland considered, among other things, a contention that a plaintiff has the burden to establish a defendant's ability to pay punitive damages by clear and convincing evidence. The court rejected that contention saying:

> Our cases have never *required* clear and convincing evidence of a defendant's financial condition to support an award of punitive damages. In *Bowden*, we made clear that evidence of a defendant's financial condition is relevant in determining whether a jury's award of punitive damages is excessive. We identified nine "legal principles or considerations which should guide a trial court in determining if a punitive damage award is excessive." Among the nine factors we included the requirement that the "amount of punitive damages 'should not be disproportionate to … the defendant's ability to pay.'" In describing this factor, we recognized that "the purpose of punitive damages is not to bankrupt or impoverish a defendant."

*Darcars*, 279 Md. at 275 (emphasis in original) (citations omitted) (citing and quoting *Bowden v. Caldor, Inc.*, 350 Md. 4 (1998)).[6] Said another way, the trier of fact (in this case the Court) must consider a number of factors, among them the defendant's financial condition, when determining the amount if any to be awarded by way of punitive damages. While I recognize that under Maryland law no one factor is necessarily dispositive and that other factors may also weigh against awarding punitive damages in this case, I believe Fayazi's financial condition alone means that any award of punitive damages would be excessive.

---

[6] Inasmuch as *Bowden* indicates that it is not the purpose of punitive damages to bankrupt a defendant, this court should proceed with caution when considering whether to award punitive damages against a debtor who has filed a bankruptcy petition. I do not mean to suggest that it should never be done, only that it should be done carefully.

Fayazi filed a voluntary petition in this Court on August 31, 2018 seeking relief under Chapter 7 of the Bankruptcy Code.[7] He was and is represented by experienced counsel in his main bankruptcy case. With his petition, Fayazi filed his Schedules of Assets and Liabilities ("Schedules"), and a Statement of Financial Affairs ("SOFA") that disclosed under oath detailed information about his financial condition and affairs.[8] No creditor objected to Fayazi's discharge under 11 U.S.C. § 727, and he was granted a discharge on December 11, 2018.[9] Prior to that time, the Chapter 7 Trustee issued a Report of No Distribution indicating that he examined Fayazi and determined that there was no property available for distribution to his creditors. But for this adversary proceeding, this is a routine no-asset case.

Moreover, regardless of what may have happened or been the case in the past, Fayazi was a man of very modest means at the time he filed his petition in this Court. The Schedules and SOFA indicate that Fayazi had assets with a value of $6,466.00, liabilities of more than $1,100,000.00, and income from January 2017 until the filing of this case in August 2018 totaling only $41,700. Fayazi was forced out of business in August of 2018 after he was evicted from his business premises. The information provided in the Fayazi Response indicates that his financial condition subsequently worsened due to loss of employment and health issues.

Even with the benefit of the fresh start afforded to him by his discharge, Fayazi will likely be unable to pay any nondischargeable judgment entered against him by this Court, let alone one augmented by substantial punitive damages as requested by Johnson. Thus, an award of punitive damages in any amount would be excessive and would not serve to deter future bad conduct, but only to impoverish him indefinitely. Such a result would be contrary to the Maryland law of punitive damages. Accordingly, no punitive damages will be awarded.

---

[7] *In re Amin Fayazi*, Case No. 18-21642-DER [Docket No. 1, Pages 1 to 7 of 59].
[8] *Id*. [Docket No. 1, Pages 10 to 49 of 59].
[9] *Id.* [Docket No. 15].

Conclusion

For the above reasons, a judgment will be entered in favor of Johnson and against Fayazi in the amount of $15,020.00, which amount is (for the reasons determined by Judge Gordon) excepted from Fayazi's discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

cc:    Mr. Timothy Johnson
       Michael P. Coyle, Esq.
       Mr. Amin Fayazi
       Marc A. Ominsky, Esq.
       Brian A. Goldman, Chapter 7 Trustee
       Gerard R. Vetter, Assistant U.S. Trustee

**-- END OF MEMORANDUM --**